Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DAVID LUGO MARIANI<br><br>Apelado<br><br>v.<br><br>HÉCTOR A. ORTIZ MERCADO Y MARÍA ESTHER GARCÍA DE JESÚS, POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS<br><br>Apelantes | TA2025AP00101 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: BY2021CV00980<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparece la parte apelante, Héctor A. Ortiz Mercado y María E. García De Jesús, por sí y en representación de la sociedad legal de gananciales compuesta por ambos, y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 9 de junio de 2025. Mediante dicho dictamen, el foro primario declaró Ha Lugar la demanda incoada por la parte apelada, David Lugo Mariani.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

### I

El 11 de marzo de 2021, David Lugo Mariani (Lugo Mariani o apelado) incoó una *Demanda*, posteriormente enmendada,[1] sobre

---

[1] Entrada Núm. 44 del Caso Núm. BY2021CV00980 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Cabe resaltar que la demanda fue enmendada a los únicos efectos de añadir a la esposa de Lugo Mariani, Iraida Calero López, como parte codemandante.

cobro de dinero en contra de Héctor A. Ortiz Mercado (Ortiz Mercado) y María E. García De Jesús, por sí y en representación de la sociedad legal de gananciales compuesta por ambos (apelantes).[2] Indicó que, el 15 de diciembre de 2014, Ortiz Mercado suscribió un contrato para que lo representara ante el Departamento de Asuntos de Veteranos (DAV). Alegó que Ortiz Mercado se comprometió en el contrato a pagar un veinte por ciento (20%) de cualquier cantidad de compensación bruta otorgada por el DAV, a ser cobrada retroactivamente. Según adujo, estos honorarios contingentes serían pagados por el DAV o directamente por Ortiz Mercado en la eventualidad que la mencionada agencia no los pagara. Argumentó que, luego de evaluar el expediente médico de Ortiz Mercado, determinó que su condición física le impedía trabajar y, debido a ello, era meritorio de beneficios adicionales, por lo que sometió una reclamación a esos efectos ante el DAV.

Lugo Mariani detalló en la acción de epígrafe que realizó varios trámites administrativos ante dicha agencia y la Junta de Asuntos del Veterano en representación de Ortiz Mercado, que resultaron en la otorgación de distintos por cientos de compensación combinada a favor de su cliente. Planteó que Ortiz Mercado no le notificó la vista que el DAV señaló para el 21 de diciembre de 2018. Según adujo, Ortiz Mercado no le notificó con el propósito de evadir el pago de los honorarios acordados. Sostuvo que Ortiz Mercado le adeudaba el veinte por ciento (20%) de aproximadamente $147,576.00 recibidos por concepto de compensación retroactiva durante el 2019 y 2020. Según adujo, había realizado múltiples gestiones de cobro, pero resultaron infructuosas. En virtud de lo anterior, solicitó el pago de $29,515.00 por concepto de honorarios no pagados y $5,000.00 de honorarios de abogado(a) por el pleito de epígrafe.

---

[2] Entrada Núm. 1 del Caso Núm. BY2021CV00980 en el SUMAC.

Por su parte, el 8 de junio de 2021, los apelantes presentaron su alegación responsiva en la cual aceptaron la existencia del contrato en cuestión.[3] Sin embargo, negaron lo adeudado, pues arguyeron que el DAV pagaría directamente a Lugo Mariani los honorarios contingentes, según acordado en el mencionado contrato. Adujeron que Lugo Mariani incumplió con sus obligaciones contractuales, toda vez que dejó de informarles sobre los desarrollos concernientes a la reclamación de Ortiz Mercado. Especificaron que Lugo Mariani no actuó con la diligencia necesaria, pues no compareció a los procesos adjudicativos. Plantearon que, contrario a lo propuesto por Lugo Mariani, la única gestión de cobro realizada por este fue mediante una carta remitida el 3 de febrero de 2021. De igual forma, sostuvieron que Lugo Mariani tampoco les informó sobre el estatus del caso desde septiembre de 2017 hasta el 3 de febrero de 2021, ni realizó gestión alguna ante la agencia durante los años 2019, 2020 y 2021. Argumentaron que, ante el abandono de representación por Lugo Mariani, se vieron en la obligación de gestionar una representación legal alterna, quien realizó gestiones conducentes a la compensación actual de Ortiz Mercado. Por lo anterior, sostuvieron que cualquier compensación recibida no se debía a las actuaciones y ejecutorias de Lugo Mariani.

Luego de varios trámites procesales, el 2 de septiembre de 2022, Lugo Mariani instó una *Moción de Sentencia Sumaria*.[4] En

---

[3] Entrada Núm. 18 del Caso Núm. BY2021CV00980 en el SUMAC.

[4] Entrada Núm. 66 del Caso Núm. BY2021CV00980 en el SUMAC. Junto a su petitorio, Lugo Mariani presentó los siguientes documentos: (1) copia de la *Declaración Jurada* suscrita por Lugo Mariani el 31 de agosto de 2022; (2) copia del *Agreement for Legal Representation Before the Department of Veterans Affairs* firmado por Ortiz Mercado, con fecha del 15 de diciembre de 2014; (3) copia del *Appointment of Individual as Claimant's Representative*, con fecha del 15 de diciembre de 2014; (4) copia del *Statement in Support of Claim*, con fecha del 15 de diciembre de 2014; (5) copia del *Appeal to Board of Veteran's Appeals*, con fecha del 2 de mayo de 2016; (6) copia de la carta emitida por el DAV con una determinación de apelación, dirigida a Ortiz Mercado; (7) copia de la carta emitida por el DAV con una determinación sobre los beneficios de Ortiz Mercado, con fecha del 11 de octubre de 2016; (8) copia del *Veteran's Application for Increased Compensation Base for Unemployability*, firmado por Ortiz Mercado, con fecha del 3 de octubre de 2016; (9) copia del *Application for Disability Compensation and Related Compensation Benefits*, firmado por Ortiz Mercado el 2 de noviembre de 2016; (10) copia del *Statement in Support of Claim*, con fecha del 2 de noviembre

síntesis, argumentó que no existía controversia de hechos materiales que impidieran la resolución sumaria del caso. Enfatizó que las partes habían suscrito un contrato mediante el cual pactaron una compensación contingente a razón de veinte por ciento (20%) de los pagos retroactivos a ser recibidos por Ortiz Mercado. Arguyó que, luego de varios trámites administrativos en los que representó a Ortiz Mercado, el 5 de marzo de 2018 el DAV resolvió a favor de su representado, quien cobró $147,575.38 en pagos de retroactivos. Alegó que Ortiz Mercado se había negado a pagar la cantidad contractualmente acordada, bajo el fundamento de que había recibido el referido pago con posterioridad a la contratación de su nueva representación legal.

En respuesta, el 10 de enero de 2023, la parte apelante se opuso.[5] En esencia, sostuvo que Ortiz Mercado recibió las compensaciones del DAV gracias a las gestiones realizadas por su nueva representación legal, Veterans of Foreign Wars Of The United States. Arguyó que el reclamo de Lugo Mariani era improcedente, toda vez que las sumas fueron recibidas con posterioridad a que

de 2016; (11) copia del *IMPORTANT — reply needed*, con fecha del 2 de agosto de 2017; (12) copia del *Statement in Support of Claim*, con fecha del 16 de agosto de 2017; (13) copia del *Statement in Support of Claim*, con fecha del 20 de octubre de 2017; (14) copia de la apelación ante el DAV, con fecha del 5 de marzo del 2018; (15) copia del *Notice Response*, con fecha del 26 de julio de 2018; (16) copia de la carta emitida por el DAV con un señalamiento de vista, dirigida a Ortiz Mercado, con fecha del 10 de octubre de 2018; (17) copia del *Appointment of Veterans Service Organization as Claimant's Representative*, con fecha del 15 de diciembre de 2014; (18) copia del *Application for Disability Compensation and Related Compensation Benefits*, con fecha del 24 de enero de 2019; (19) copia del *Rating Decision*, con fecha del 27 de septiembre de 2019; (20) copia del desglose de los pagos de beneficios a Ortiz Mercado, desde el 2018 hasta el 2020; (21) copia del *Informal Hearing Presentation*, con fecha del 13 de noviembre de 2019; (22) copia del *Rating Decision*, con fecha del 10 de enero de 2020; (23) copia de la decisión de la apelación de Ortiz Mercado, con fecha del 6 de enero de 2020; (24) copia de la carta emitida por el DAV sobre la renuncia de representación legal de Lugo Mariani, dirigida a Ortiz Mercado, con fecha del 4 de octubre de 2021; (25) copia de la transcripción de la *Toma de Deposición* de Ortiz Mercado, celebrada el 23 de septiembre de 2021.

[5] Entrada Núm. 81 del Caso Núm. BY2021CV00980 en el SUMAC. Los apelantes acompañaron su oposición con los siguientes documentos: (1) copia del *Rating Decision*, con fecha del 26 de agosto de 2013; (2) copia del *Agreement for Legal Representation Before the Department of Veterans Affairs* firmado por Ortiz Mercado, con fecha del 15 de diciembre de 2014; (3) copia de la carta emitida por el DAV con un señalamiento de vista, dirigida a Ortiz Mercado, con fecha del 10 de octubre de 2018; (4) copia de la carta emitida por el DAV sobre la certificación de la apelación de Ortiz Mercado, con fecha del 27 de enero de 2017; (5) copia de la transcripción de la *Toma de Deposición* de Lugo Mariani, celebrada el 20 de octubre de 2021.

cesara su representación legal, por lo que tales cuantías no eran atribuibles a las gestiones profesionales que este haya realizado.

Evaluadas las posturas de las partes, el 15 de febrero de 2023, el Tribunal de Primera Instancia emitió y notificó una *Resolución*, mediante la cual declaró No Ha Lugar el petitorio sumario.[6] En específico, el foro de origen esbozó las siguientes determinaciones de hechos:

1. El 15 de diciembre de 2014, el codemandado Héctor Ortiz Mercado, firmó un contrato de representación legal con el codemandante, Lcdo. David Lugo Mariani, donde se acordaron honorarios contingentes.
2. El mismo 15 de diciembre de 2014, el codemandado Héctor Ortiz Mercado autorizó ante [el] DVA la representación legal mediante formulario VA 21-22a (Appointment of Individual as Claimant's Representative).
3. El demandante examinó los documentos y el expediente médico del codemandado y sometió reclamación mediante el formulario VA 21- 4138.
4. El demandante presentó una apelación ante la Junta mediante formulario VA 9 y sus respectivos anejos.
5. El 11 de octubre 2016[,] el DVA comunicó al codemandado que ajustaría el porcentaje combinado de compensación a 90% con efectividad del 4 de mayo de 2016.
6. El 2 de agosto de 2017 el DVA comunicó al codemandado que estaría reduciendo el porcentaje de compensación combinada de 90% a 80%.
7. El 5 de marzo de 2018, la Junta emitió [una] decisión devolviendo el caso ("Remand") al DVA entre otros ordenó, *[sic]* obtener expedientes de tratamiento, realizar exámenes médicos y re adjudicar la reclamación de "Individual Unemployability" gestionada por el demandante.
8. El 26 de julio de 2018, en cumplimiento [con] la sección 5103 del Título 38 del Código de Estados Unidos, el demandante respondió a la [a]gencia que la evidencia necesaria en el caso estaba sometida.
9. El 10 de octubre de 2018[,] el DVA notificó al codemandado [el señalamiento de una] vista a celebrarse el 21 de diciembre de 2018.
10. El 22 de octubre de 2018[,] el codemandado contrató los servicios de Veterans of Foreign Wars of the United States.
11. El 27 de septiembre de 2019, el DVA emitió [un] "Rating Decision" otorgándole al [d]emandado beneficios como resultado de la [d]ecisión de la Junta.
12. El 4 de octubre de 2021, el DVA notificó al codemandado que con efectividad del 25 de octubre de 2018 ya no estaba representado por el demandante.

El foro juzgador examinó los documentos adjuntos a la moción de sentencia sumaria y determinó que estos no eran

---

[6] Entrada Núm. 86 del Caso Núm. BY2021CV00980 en el SUMAC.

suficientes para resolver sumariamente la causa de acción, ya que subsistían controversias que debían ser dirimidas en un juicio plenario. En virtud de ello, detalló las siguientes controversias:

1. ¿Qué tareas realizó el demandante en detalle?
2. ¿Hasta qu[é] momento el demandante fungió como representante legal del codemandado?
3. ¿El dinero recibido por el codemandado fue por las reclamaciones y apelaciones atendidas por el demandante?
4. ¿Qué cantidad de dinero fue recibida por el codemandado como retroactivo de las reclamaciones y apelaciones atendidas por el demandante?
5. ¿A cuáles años corresponden las cantidades de dinero recibidas por el codemandado y a qué condiciones médicas?
6. ¿A partir de qu[é] momento y qu[é] tareas realizó el Veterans of Foreign Wars of the United States?
7. ¿Qué cantidad de dinero alegadamente le pagó el codemandado al demandante por recibir beneficios retroactivos durante el año 2016?
8. ¿Qué cantidad de dinero[,] si alguna[,] le corresponde al demandante por honorarios contingentes?

Posteriormente, el 20 de mayo de 2025, se celebró el juicio en su fondo, al cual comparecieron las partes.[7] La prueba testifical estuvo compuesta por el testimonio de Lugo Mariani. A su vez, se admitió en evidencia los siguientes documentos:

Prueba Estipulada:

- Exhibit #1 — Contrato de Servicios Legales del 15 de diciembre de 2014 (2 folios).

Prueba Parte Demandante:

- Exhibit #1 — *Statement in Support of Claim* del 15 de diciembre de 2014 (2 folios).
- Exhibit #2 — *Appeal to Board of Veteran's Appeals* (6 folios).
- Exhibit #3 — *Decision Board of Veteran's Appeals* del 5 de marzo de 2018 (14 folios).
- Exhibit #4 — *Rating Decision* del 27 de septiembre de 2019 (6 folios).
- Exhibit #5 — *Rating Decision* del 10 de enero de 2020 (5 folios).
- Exhibit #6 — Héctor A. Ortiz Mercado *C&P Payments* de los años 2018, 2019, 2020 y *compensation benefits paid*, enviado por el DAV al demandado el 9 de mayo de 2022 (4 folios).
- Exhibit #7 — *Informal Hearing Presentation* del 13 de noviembre de 2019 (1 folio).
- Exhibit #8 — *VA Form 21-526EZ* del 10 de noviembre de 2016 (4 folios).

---

[7] Entrada Núm. 125 del Caso Núm. BY2021CV00980 en el SUMAC. Cabe destacar que un defensor judicial compareció en lugar de Ortiz Mercado.

Examinados los planteamientos de las partes, el 9 de junio de 2025, el Tribunal de Primera Instancia emitió y notificó la *Sentencia* que nos ocupa, mediante la cual declaró Ha Lugar la acción de epígrafe.[8] En particular, el foro primario esbozó las siguientes determinaciones de hechos:

1. David Lugo Mariani (demandante) es abogado de profesión desde mayo de 1975.
2. Este trabajó en el Departamento de Asuntos de Veteranos desde diciembre de 1975 hasta el 2005.
3. Este ocupó diferentes posiciones en dicha agencia[,] [c]onvirtiéndose en un abogado con experiencia en el campo de las reclamaciones de beneficios de veteranos.
4. Desde el 2008 ha tenido su práctica privada de la abogacía en representación de veteranos.
5. Se inactiv[ó] el año pasado (2024) como abogado.
6. El demandante conoció al demandado por un amigo en común.
7. Ambos tienen apartamento[s] de playa en Villas del Mar en Loíza y se veían allí.
8. El demandado le dijo al demandante que era veterano y que tenía un 50% de compensación, por lo que quería que el demandante evaluara su caso.
9. El demandante le pidió los últimos tres años de su expediente médico.
10. El demandante aceptó la representación del demandado luego de recibir la evidencia médica.
11. El 15 de diciembre de 2014, el codemandado Héctor Ortiz Mercado, firmó un contrato de representación legal con el codemandante, Lcdo. David Lugo Mariani, donde se acordaron honorarios contingentes.
12. Ese contrato establece honorarios de contingencia de 20% del retroactivo que se reciba del Departamento de Asuntos de Veteranos.
13. Mediante el contrato[,] el demandado (cliente) autoriza al abogado el acceso a sus récords médicos.
14. El contrato fue suscrito en la residencia del demandante.
15. El demandado se comprometió a llevar los escritos a las facilidades de la agencia y le regresaba copia ponchada al demandante[.]
16. El mismo 15 de diciembre de 2014, el codemandado Héctor Ortiz Mercado autorizó ante [el] DVA la representación legal mediante formulario VA 21-22a (Appointment of Individual as Claimant's Representative).
17. El demandante examinó los documentos y el expediente médico del codemandado y sometió [una] reclamación mediante el formulario VA 21- 4138.
18. El demandante presentó una apelación ante la Junta mediante [el] formulario VA 9 y sus respectivos anejos.
19. El 11 de octubre 2016[,] el DVA comunicó al codemandado que ajustaría el porcentaje combinado de compensación a 90% con efectividad del 4 de mayo de 2016.

---

[8] Entrada Núm. 126 del Caso Núm. BY2021CV00980 en el SUMAC.

20. El 2 de agosto de 2017[,] el DVA comunicó al codemandado que estaría reduciendo el porcentaje de compensación combinada de 90% a 80%.

21. El 5 de marzo de 2018, la Junta emitió [una] decisión devolviendo el caso ("Remand") al DVA entre otros ordenó, *[sic]* obtener expedientes de tratamiento, realizar exámenes médicos y re adjudicar la reclamación de "Individual Unemployability" gestionada por el demandante.

22. El 26 de julio de 2018, en cumplimiento [con] la sección 5103 del Título 38 del Código de Estados Unidos, el demandante respondió a la [a]gencia que la evidencia necesaria en el caso estaba sometida.

23. El 10 de octubre de 2018[,] el DVA notificó al codemandado [un señalamiento de] vista a celebrarse el 21 de diciembre de 2018.

24. El 22 de octubre de 2018[,] el codemandado contrató los servicios de Veterans of Foreign Wars of the United States.

25. El 27 de septiembre de 2019, el DVA emitió [un] "Rating Decision" otorgándole al [d]emandado beneficios como resultado de la [d]ecisión de la Junta.

26. El 4 de octubre de 2021, el DVA notificó al codemandado que con efectividad del 25 de octubre de 2018 ya no estaba representado por el demandante.

27. El contrato requiere notificación escrita del demandado al demandante relevándolo de sus servicios profesionales.

28. La parte demandada no le envió al demandante comunicación escrita relevándolo de sus funciones.

29. El demandado visitó la residencia del demandante en siete ocasiones aproximadamente.

30. El demandado no fue a la residencia del demandante para informarle que rescindía de sus servicios.

31. El demandado conocía el número de celular del demandante y tampoco lo llamó para prescindir de sus servicios.

32. El demandante hizo gestiones profesionales a favor del demandado desde diciembre de 2014 hasta finales del 2018.

33. Su primera comparecencia fue el 15 de diciembre de 2014. con la presentación del "statement in support of claim". Es ese escrito que por primera vez se reclama [el] Individual Unemployability en servicio del demandado.

34. En el 2016 el demandante logró que le aumentaran los beneficios de compensación al demandando de un 50% a un 90%.

35. En el 2018 recibió notificación de reducción de un 90% a un 80% por un error [en] la evaluación de condición de salud.

36. Las partes se reunieron en marzo del 2018 para que el demandante le explicara al demandado el contenido de la determinación.

37. [El] [d]emandante le pidió a la agencia [que] evaluara las extremidades inferiores del demandado.

38. También reclamó otras condiciones médicas del demandado.

39. Fue el demandante quién reclamó el "Individual Unemployability" en beneficio del demandado.

40. De lograrse una determinación a su favor[,] obtendría beneficios de un 100%.

41. No se puede solicitar con 50% de beneficios. Tiene que ser mayor de 70% en conjunto de varias condiciones.

42. [El] [d]emandante recibió pagos por retroactivos del demandado. Uno de $166.00 y otro de $418.00.

43. [E] [d]emandante solicitó retroactivo por su reclamación de "Individual Unemployability".

44. Al demandado se le adjudicó el "Individual Unemployability" con retroactividad al 2016.

45. [El codemandado] [r]ecibió un retroactivo de $50,328.57.

46. Fue Asuntos de Veteranos quien le comunicó al demandante que el demandado había contratado [a] otra representación legal.

47. El demandante fue sustituido por una organización sin fines de lucro, Veterans of Foreign Wars of the United States, que no cobra honorarios.

48. Al demandado se le adjudicaron beneficios del "Individual Unemployability" con retroactividad al 27 de abril de 2016.

49. Los beneficios en retroactivo ascendieron a $50,328.57.

50. Esa cantidad surge como resultado del trabajo realizado por el demandante.

51. El propio documento así lo refleja. Al indicar que es resultado de la apelación del 5 de marzo de 2018.

52. El 10 de enero de 2020 se emitió otra determinación[;] dicho documento establece que hacer *[sic]* su determinación de una apelación del 6 de enero de 2020.

53. Para esa fecha[,] el demandante no era el abogado del demandado. No fue el demandante quien presentó esa apelación.

54. En esa determinación hacen retroactivo al "Individual Unemployability" al 14 de junio de 2012.

55. El retroactivo recibido por el demandando por esa determinación ascendió a $97,246.81.

56. El demandado recibió retroactivos en total de $147,573.38.

57. El demandante no cobró por sus servicios.

58. El demandante invirtió más de 60 horas evaluando los expedientes médicos del demandado.

59. El demandante tiene vasta experiencia en los procesos administrativos ante el Departamento de Asuntos de Veteranos.

60. El demandado se benefició de los servicios profesionales del demandante.

61. El demandado fue relevado de sus funciones mediante comunicación del Departamento de Asuntos del Veterano con efectividad al 25 de octubre de 2018.

El foro *a quo* determinó que el contrato de honorarios contingentes suscrito entre las partes culminó el 4 de octubre de 2021, cuando el DAV notificó que —con efectividad del 25 de octubre de 2018— Lugo Mariani no representaba a Ortiz Mercado. Concluyó que no aplicaban los honorarios por contingencia, pues no fue Lugo

Mariani quien finalizó los servicios para los cuales fue contratado. Indicó que, en consecuencia, la cuantía pactada en el contrato de contingencia no era la base para calcular la compensación a la que podría tener derecho Lugo Mariani. No obstante, coligió que eran de aplicación los principios correspondientes al cobro de dinero bajo el *quantum meruit.*

Utilizando como base los factores enumerados en el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24, y lo dispuesto por nuestro Tribunal Supremo en *Blanco Matos v. Colón Mulero,* 200 DPR 398, 415 (2018), el foro primario consideró los siguientes hechos para determinar los honorarios correspondientes: (1) Lugo Mariani no cobró por sus servicios e invirtió más de sesenta (60) horas evaluando solamente los expedientes médicos de Ortiz Mercado; (2) Lugo Mariani tenía vasta experiencia en los procesos administrativos ante el DAV; (3) Ortiz Mercado se benefició de los servicios profesionales de Lugo Mariani; (4) Lugo Mariani hizo gestiones profesionales a favor de Ortiz Mercado desde diciembre de 2014 hasta finales del 2018; (5) Lugo Mariani logró que le aumentaran los beneficios de compensación a Ortiz Mercado y este recibió retroactivos por un total de $147,573.38.

En virtud de lo anterior, el foro de instancia concluyó que $12,000.00 era una cantidad razonable como pago por los servicios legales prestados por Lugo Mariani. Expresó que no albergaba duda de que Ortiz Mercado se benefició de la experiencia y del trabajo de Lugo Mariani, por lo que este último debía ser remunerado por sus servicios. En consecuencia, ordenó el pago de la mencionada cifra, por entender que la deuda era líquida, vencida y exigible.

Inconforme, el 9 de julio de 2025, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente señalamiento de error:

ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL CONDENAR A LA PARTE DEMANDADA AL PAGO DE HONORARIOS QUANTUM MERUIT SIN QUE LA DEMANDA CONTUVIERA UN RECLAMO ALGUNO EN ESA DIRECCI[Ó]N, ASÍ COMO SIN QUE LA PARTE DEMANDANTE CUMPLIERA CON SU CARGA PROBATORIA CONFORME A LOS REQUISITOS ENUMERADOS EN EL CASO <u>BLANCO MATOS V. COLÓN MULERO</u>, SUPRA[.]

Presentada la transcripción de la prueba oral, el 18 de septiembre de 2025, la parte apelante presentó un *Alegato Suplementario*. Posteriormente, la parte apelada compareció mediante *Alegato de R[é]plica en Oposici[ó]n* el 14 de octubre del año corriente.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procedemos a resolver.

**II**

**A**

Como norma general, el contrato de servicios profesionales de abogado(a) se considera una variante del contrato de arrendamiento de servicios de acuerdo con el Artículo 1434 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 4013 (derogado).[9] Por tal razón, las reglas generales sobre interpretación de contratos son de aplicación al contrato de servicios profesionales de abogado. *Ramírez, Segal & Látimer v. Rojo Rigual,* 123 DPR 161 (1989). Ahora bien, distinto a un contrato de arrendamiento, el contrato de servicios profesionales de un(a) abogado(a) está revestido de un alto contenido ético. *Berkan et al. v. Mead Johnson Nutrition,* 204 DPR 183 (2020). Es por ello que se considera uno de naturaleza *sui generis. In re Ayala Oquendo,* 166 DPR 587 (2005). Así, la gestión profesional queda establecida conforme a las normas generales que rigen la fijación de honorarios de abogado(a), según el Canon 24 del Código de Ética Profesional, 4

---

[9] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

LPRA Ap. IX, C. 24. En ese sentido, ciertas disposiciones éticas regulan y establecen unos límites legales a las cuantías susceptibles de ser cobradas por el abogado o la abogada. *Nassar Rizek v. Hernández*, 123 DPR 360, 370 (1989).

En ausencia de contrato, el cómputo de la cuantía de honorarios de abogado(a) susceptibles de ser cobrada puede ser calculada a base del criterio de *quantum meruit*. El precepto legal *quantum meruit* significa "tanto como se merece". I. Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed. rev., San Juan, Ed. Lexis, 2000, pág. 395. Esta máxima reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado. *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545, 557 (1992).

En nuestro ordenamiento jurídico, la acción para reclamar el valor razonable de servicios a base de un *quantum meruit* emanaba del Artículo 1473 del Código Civil del 1930, 31 LPRA ant. sec. 4111 (derogado), el cual disponía, en lo pertinente, que:

> En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieran diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte con jurisdicción competente, el importe razonable de dichos servicios.

De una lectura del precitado artículo, se puede colegir que proveía un remedio de restitución basado en elementos de justicia. Este procuraba evitar el enriquecimiento injusto de quien recibe un servicio, permitiéndole al que lo presta la posibilidad de reclamar su valor razonable cuando no se hubiera pactado un precio cierto. *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 272 (2021); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 413 (2018).

Sobre ese particular, el Tribunal Supremo de Puerto Rico ha explicado que, en este tipo de acción de cobro de dinero por servicios prestados, el peso de la prueba recae sobre el abogado o la abogada.

Por tal razón, le corresponde a la parte letrada presentar prueba, sea directa o circunstancial, sobre: (1) las gestiones profesionales que realizó para beneficio de su cliente; (2) las horas o fracción de tiempo que le dedicó a cada una de dichas gestiones, y (3) el valor razonable de las horas dedicadas. *Cruz Pérez v. Roldán Rodríguez et al.*, supra; *Blanco Matos v. Colón Mulero*, supra.

Una vez el Tribunal de Primera Instancia evalúa la prueba, tiene el deber de fijar los honorarios a los que tenga derecho la parte reclamante y evaluar su razonabilidad. Para ello, el foro primario debe tomar en consideración, entre otros, los factores enumerados en el Canon 24 del Código de Ética Profesional, *supra,* a saber:

(1) El tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;

(2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;

(3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;

(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;

(5) la contingencia o certeza de la compensación, y

(6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

[…]

**B**

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi,* 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su

cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

## C

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la

prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy*

*et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

Como único señalamiento de error, la parte apelante plantea que el Tribunal de Primera Instancia incidió al concederle los honorarios *quantum meruit* a la parte apelada sin que esta contuviera reclamo alguno a esos efectos en la acción de epígrafe. Por otro lado, sostiene que la parte apelada tampoco cumplió con la carga probatoria conforme a los requisitos enumerados en el caso *Blanco Matos v. Colón Mulero,* supra.

Hemos examinado ponderadamente el expediente ante nos, la transcripción de la prueba oral, las posturas de las partes, el derecho aplicable y su jurisprudencia interpretativa, y concluimos que el foro primario no erró en su determinación. Nos explicamos.

La controversia del presente caso gira en torno a si procedía otorgarle a la parte apelada los honorarios *quantum meruit.* Según alega la parte apelante, estos no proceden por dos razones: (1) la parte apelada no los solicitó en su *Demanda,* y (2) tampoco probó que procedían.

En primer lugar, es preciso descartar el planteamiento de la parte apelante en cuanto a la improcedencia del referido tipo de honorarios por no haber sido solicitados en la acción de epígrafe. Sabido es que nuestro ordenamiento jurídico permite que el foro sentenciador otorgue los remedios que en ley procedan luego de aquilatar la prueba que tuvo ante sí, independientemente si la parte demandante, aquí apelada, incluyó tal remedio en su súplica inicial.

Superado lo anterior, en cuanto a la segunda alegación de la parte apelante sobre si se probó que procedían los honorarios *quantum meruit,* de una lectura sosegada de la transcripción de la prueba oral surge claramente lo determinado por el foro *a quo* de que: (1) Lugo Mariani no cobró por sus servicios e invirtió más de sesenta (60) horas evaluando los expedientes médicos de Ortiz Mercado; (2) Lugo Mariani tenía vasta experiencia en los procesos

administrativos ante el DAV; (3) Ortiz Mercado se benefició de los servicios profesionales de Lugo Mariani; (4) Lugo Mariani hizo gestiones profesionales a favor de Ortiz Mercado desde diciembre de 2014 hasta finales del 2018; (5) Lugo Mariani logró que le aumentaran los beneficios de compensación a Ortiz Mercado y este recibió retroactivos por un total de $147,573.38.

Ante ese escenario fáctico y la sana discreción que le confiere nuestro ordenamiento jurídico, el foro de origen resolvió que procedían los honorarios *quantum meruit*. Nada en la transcripción de la prueba oral ni en el expediente ante nuestro haber nos sugiere que medió pasión, prejuicio, parcialidad o error manifiesto de parte del tribunal de instancia al emitir dicha decisión. Recordemos que, en el derecho vigente, no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Por consiguiente, el error señalado no se cometió.

En virtud de lo anterior, colegimos que el foro de origen no erró al emitir la *Sentencia* apelada declarando Ha Lugar la acción de epígrafe. Al analizar concienzuda y ponderadamente el expediente ante nos al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro primario.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones